IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JACK W. WHITTENBERG**,

                Plaintiff,                    Civil No. 3:11-cv-00475-AC

      v.                    **FINDINGS AND
RECOMMENDATION**

**MICHAEL J. ASTRUE**,

                Defendant.

_____

ACOSTA, Magistrate Judge:

      Plaintiff Jack Whittenberg ("Whittenberg") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits and Supplemental Security Income payments under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The matter should be reversed and remanded for

1 - FINDINGS AND RECOMMENDATION

for further proceedings.

## BACKGROUND

Born in 1959 (Tr. 162), Mr. Whittenberg alleges disability beginning August 17, 2006 (Tr. 162) due hepatitis C, diabetes, neuropathy, bipolar disorder, and shoulder, neck, and back injuries stemming from a car accident. Tr. 180. The Commissioner denied Mr. Whittenberg's application initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on December 14, 2009. Tr. 47-101. The ALJ found Mr. Whittenberg not disabled on January 19, 2010. Tr. 30-40. The Appeals Council accepted additional evidence into the record, but denied review of the matter on March 15, 2011. Tr. 1-5. This action made the ALJ's decision the final decision of the Commissioner, 20 C.F.R. § 410.670a, and Mr. Whittenberg now challenges that finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an

2 - FINDINGS AND RECOMMENDATION

impairment "listed" in the Commissioner's regulations.  If it does, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R. §§ 404.1520(e); 404.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work.  If the claimant can perform his past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).   If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  If the claimant cannot perform such work, he is disabled.  20 C.F.R. § 404.1520(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant.  *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098.  If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Tackett*, 180 F.3d. at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

///

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Mr. Whittenberg's depression, personality disorder, history of substance dependence, marijuana abuse, and "status post lumbar laminectomy" "severe" at step two in the sequential proceedings. Tr. 33. She found that these impairments did not meet or equal a listed disorder at step three, and found that Mr. Whittenberg may perform medium-exertional work, including balancing and crawling, and simple repetitive tasks. Tr. 35. However, the ALJ restricted Mr. Whittenberg to only occasional public contact and no work in groups or with "harsh or overly critical supervisors." *Id.* The ALJ concluded that this RFC allowed Mr. Whittenberg to perform his past relevant work at step four (Tr. 39), and therefore found Mr. Whittenberg not disabled. Tr. 40.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court, however, may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch*

4 - FINDINGS AND RECOMMENDATION

*v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947)); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Mr. Whittenberg challenges the ALJ's findings regarding his credibility and that of a lay witness. He also asserts that the ALJ erroneously evaluated the medical evidence. The Commissioner responds that the ALJ's findings regarding Mr. Whittenberg's testimony and that of the lay witness should be affirmed, but concedes error regarding the ALJ's evaluation of treating psychiatrist Thomas Dodson, M.D. The Commissioner asks that the court remand the matter for further proceedings to (1) readdress Dr. Dodson's opinion, and (2) address evidence submitted to the Appeals Council. Def.'s Br., 11.

## I.    Credibility

Mr. Whittenberg asserts that the ALJ erroneously evaluated his credibility.

### A.    Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing the claimant's inconsistent statements regarding symptoms. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    Analysis

The ALJ's credibility analysis cited Mr. Whittenberg's daily activities, his work history, and vague testimony regarding his drug use. Tr. 38. Mr. Whittenberg challenges the ALJ's introductory reference to his RFC assessment in discussing Mr. Whittenberg's credibility only. Pl.'s Opening Br. 16.

### 1.    Activities of Daily Living

The ALJ cited Mr. Whittenberg's daily activities, including driving, doing laundry, and walking three to four blocks before requiring rest. Tr. 38. Mr. Whittenberg does not challenge this finding. The record shows that Mr. Whittenberg reported these activities. Tr. 206-07, 209. At his hearing before the ALJ, Mr. Whittenberg reported that he could walk four to five blocks (Tr. 58), and drives once a week. Tr. 74. He also testified that he cares for his cat, does light housework such as dusting and vacuuming, and cooks simple meals for himself. Tr. 75. He accompanies his mother

grocery shopping, lifts groceries for her, and washes dishes with her. Tr. 75-76. Finally, Mr. Whittenberg testified he can sit thirty-five minutes, and can walk up four flights of stairs with rest. Tr. 78. He can lift or drag fifty pounds. Tr. 80.

The ALJ credibility analysis may cite a claimant's activities that are inconsistent with the claimant's alleged symptoms and limitations. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Lingenfelter*, 504 F.3d at 1040. This reasoning need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Astrue*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Further, this court must defer to an ALJ's interpretation of a claimant's activities, if based on substantial evidence, when two reasonably plausible interpretations arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001).

The record described above supports the ALJ's finding that Mr. Whittenberg performed the daily activities the ALJ cited. Substantial evidence is "more than a mere scintilla, but less than a preponderance," *Bray*, 554 F.3d at 1222, and Mr. Whittenberg's activities indicated by the ALJ are consistent with this standard. The ALJ's finding that these activities are inconsistent with Mr. Whittenberg's allegation of total disability is based upon the appropriate legal standard, and the ALJ's finding on the matter should therefore be affirmed.

## 2. Work History

The ALJ found that Mr. Whittenberg's work history placed his credibility in an "unfavorable light," specifically noting that his work history was sporadic, and for some years showed no income. Tr. 38. The ALJ may cite a claimant's work history; a poor work history may detract from his credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The record shows that Mr.

Whittenberg worked in various auto service positions, with periods of unemployment in 1990, 1994, 1999, 2000, 2001, and 2003, and no employment between 2003 and his August 17, 2006, alleged onset date. Tr. 252. The ALJ's characterization of this activity as "sporadic" is reasonably based upon the record. Consequently, the ALJ's conclusion that this activity detracted from Mr. Whittenberg's credibility is based upon the record and the appropriate legal standards. It should therefore be affirmed.

### 3.    Vague Testimony Regarding Drug Use

The ALJ cited Mr. Whittenberg's "vague and misleading statements about his drug use," and noted that the medical record contradicted these statements. Tr. 38. The ALJ may rely upon "ordinary techniques" of credibility evaluation, including inconsistencies "either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112.

In response to the ALJ's comment that the record shows "a long history of substance abuse," Mr. Whittenberg stated that he had not smoked marijuana since an unspecified time prior to his July 2009 automobile accident, and that he acquired hepatis C during a one-time intravenous cocaine use. Tr. 81. The Commissioner accurately points out that a drug test upon his automobile accident was positive for marijuana. Def.'s Br. 8 (citing Tr. 690). Further, treating physician Dr. Dodson noted that Mr. Whittenberg's marijuana use was uncontrolled on August 17, 2009 (Tr. 689), and remained an issue of clinical significance in October 2009. Tr. 686, 689. This evidence supports the ALJ's conclusion that Mr. Whittenberg was not candid regarding his drug use; the ALJ may properly cite such an observation in his credibility analysis. *Molina*, 674 F.3d at 1112. The ALJ's findings on the matter should therefore be affirmed.

///

### 4.    RFC Conclusion

Finally, Mr. Whittenberg asserts that the ALJ erroneously cited his own RFC conclusion in finding Mr. Whittenberg not credible.  Pl.'s Opening Br. 16.

In discussing Mr. Whittenberg's credibility, the ALJ first stated that Mr. Whittenberg's statements were inconsistent with the ALJ's RFC assessment.  Tr. 38.  The ALJ must consider a claimant's symptom testimony in assessing his RFC.  20 C.F.R. §§ 404.945(a)(3); 416.945(a)(3); SSR 96-8p (available at 1996 WL 374184 at *7).  Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning. *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010); *see also Young v. Astrue*, No. 09-23-AC (available at 2010 WL 331781 at *5) (D. Or. 2010).

However, Mr. Whittenberg misreads the ALJ's statement.  The wording is admittedly confusing and not as clear as it should be.  Nonetheless, it simply conveys the general concept that the ALJ's RFC assessment includes those statements by Mr. Whittenberg concerning his symptoms that the ALJ found credible and excludes his other statements that the ALJ found not credible.  This court does not interpret this statement as the ALJ relying upon her own RFC assessment to find Mr. Whittenberg not credible.  Instead, the ALJ's reasoning rejecting Mr. Whittenberg's symptom testimony is set forth in the paragraphs that follow the ALJ's introductory statement.  Mr. Whittenberg therefore fails to establish error.

### C.    Credibility Conclusion

In summary, the ALJ's credibility analysis should be affirmed.

## II.    Lay Testimony

Mr. Whittenberg asserts that the ALJ erroneously evaluated lay testimony submitted by his

mother, Jacqueline Wittenberg. Pl.'s Opening Br. 16. The Commissioner responds that the ALJ's

conclusions on the matter should be affirmed. Def.'s Br. 9-10.

### A.    Lay Testimony: Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d);

416.913(d); *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996);

*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ must provide germane reasons for

rejecting lay testimony. *Molina*, 674 F.3d at 1114 (citing *Doddrill v. Shalala*, 12 F.3d 915, 919 (9th

Cir. 1993)). However, the ALJ is not required to address each witness "on an individualized

witness-by-witness basis," and may reject lay testimony predicated upon reports of a claimant

properly found not credible. *Molina*, 674 F.3d at 1114 (citing *Valentine v. Astrue*, 574 F.3d 685, 694

(9th Cir. 2009)).

### B.    Analysis

Mr. Whittenberg's mother, Jacqueline Whittenberg, submitted a written questionnaire to the

record on April 21, 2007. Tr. 188-95. She wrote that Mr. Whittenberg spends his days talking on

the phone and watching television, and sometimes feeds a cat when she reminds him. Tr. 189. Ms.

Whittenberg also reminds him to bathe, and wrote that he is unable to live without her help in "all

of the above," including dressing, bathing, caring for his hair, shaving, feeding himself, and using

the toilet. Tr. 189. She tells Mr. Whittenberg to shower, shave, and change his bedding. Tr. 190.

He can "sometimes" prepare sandwiches, but is too tired to cook. *Id.* Ms. Whittenberg wrote that

Mr. Whittenberg shops for food and clothing, and helps her with her own shopping. Tr. 191.

Mr. Whittenberg's hobbies include watching television and listening to music. Tr. 192. Ms.

Whittenberg indicated Mr. Whittenberg was limited in lifting, squatting, bending, standing, reaching, walking, sitting, and stair climbing, and in memory, completing tasks, concentration, following instructions, and getting along with others. Tr. 193. However, she also wrote that these limitations "do not effect him all the time or at the same time." *Id.*

Ms. Whittenberg also testified at Mr. Whittenberg's December 14, 2009, hearing before the ALJ. Tr. 86-95. She stated that he sleeps a lot, is reclusive, and requires reminders to perform housework. Tr. 87. Ms. Whittenberg also testified that Mr. Whittenberg's depression is "worse" four out of seven days, and appears to be in pain "a lot of times." Tr. 88.

The ALJ recounted Ms. Whittenberg's testimony, and gave her observations "weight to the extent that they support the residual functional capacity assessed herein." Tr. 37.

The ALJ may reject lay testimony by pointing to reasons she relied upon in rejecting similar testimony. *Molina*, 674 F.3d at 1114. Here, the ALJ pointed to her RFC analysis. Tr. 37. As noted, such a conclusion, standing alone, is insufficient. However, the ALJ's RFC analysis incorporated discussion of Mr. Whittenberg's own credibility, discussed at length above. The ALJ may reject lay testimony that repeats testimony of a claimant properly found not credible. *Molina*, 674 F.3d at 1114 (citing *Valentine*, 574 F.3d at 694). Ms. Whittenberg described limitations already rejected by the ALJ in his assessment of Mr. Whittenberg's testimony. Therefore, Mr. Whittenberg does not now establish reversible error in the ALJ's analysis of Ms. Whittenberg's testimony.

## III.    Medical Evidence

Mr. Whittenberg asserts that the ALJ erroneously evaluated the opinions of two treating physicians, an examining physician, two reviewing physicians, and a nurse practitioner. He

specifically argues that the ALJ "failed to defer to the experts" in each instance. Pl.'s Opening Br. 12.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* The ALJ may also consider the extent to which an opinion is supported by clinical notes and findings. 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(1)(3); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.    Analysis

### 1.    Treating Physician Thomas Dodson, M.D.

Mr. Whittenberg's argument first discusses treating psychiatrist Thomas Dodson, M.D. Pl.'s Opening Br. 12. He does not articulate specific error by the ALJ. The Commissioner concedes that the ALJ did not "fully consider" this opinion, and asserts that the ALJ must re-evaluate Dr. Dodson's opinion in conjunction with contradicting medical source opinions upon remand. Def.'s Br. 12.

Dr. Dodson submitted a letter to the record on November 24, 2009, stating that he treats Mr. Whittenberg, and has seen him a total of five times between July 20, 2009, and November 2009. Tr. 723. The record reflects these visits. Tr. 685-690. During this time Dr. Dodson administered various psychotropic medications and assessed bipolar disorder. *Id.* He also noted that Mr.

Whittenberg's cannabis use is "poorly controlled" on August 14, 2009.  Tr. 689.

The ALJ did not discuss Dr. Dodson's opinion, and the Commissioner concedes this error.
Def.'s Br. 12.  The effects of this error are discussed below.

### 2.    Treating Psychiatrist Lawrence Sacks, M.D.

Mr. Whittenberg also asserts that a 2004 treatment note submitted by Lawrence Sacks, M.D.
supports a finding of disability.  Pl.'s Opening Br. 13.  He again does not explain any alleged error
by the ALJ, and does not point to specific citations in the record.  *Id.* at 13-14.

The record contains a handwritten three page note without signature, identified by the court
transcript index as "Medical Evidence of Record, dated 11/15/2004, from Lawrence Sacks, M.D."
Tr. 296-98.  These notes show Dr. Sacks's notation that Mr. Whittenberg characterized himself as
naive, and stated, "chivalry runs in my family."  Tr. 296.  Mr. Whittenberg also reported legal
troubles relating to an incident with a woman's husband, and seventeen years in the marine corps.
Tr. 296.  Dr. Sacks noted Mr. Whittenberg's report of intravenous cocaine use at age 20, and that he
sold "hash + coke."  Tr. 297.

Dr. Sacks wrote "depressed," though it is unclear whether this is based upon his own
observation or Mr. Whittenberg's report.  *Id.*  Dr. Sacks also noted that Mr. Whittenberg is "totally
tangential."  *Id.*  The treatment note concludes with "called mom," apparently indicating that Dr.
Sacks spoke to Mr. Whittenberg's mother.  Tr. 298.  Here Dr. Sacks noted, "made a 'to do' list [sic]
can accomplish that," noted a report of excessive thirst, and wrote "Do we need to go Adderall to
lower dose," and "is a poet - has published 3 in last few years."  *Id.*

Mr. Whittenberg does not now explain the manner in which these cryptic notes establish

disability.  Pl.'s Opening Br. 13.  Dr. Sacks's statements that Mr. Whittenberg reported depression, was tangential, spoke in cliches, and had a conviction for vehicular assault do not establish work-related limitations beyond those articulated in the ALJ's RFC assessment.  Further, Dr. Sacks's opinion pertains to November 2004, which was well before Mr. Whittenberg's August 2006 alleged onset date.  For these reasons, Mr. Whittenberg fails to establish that the ALJ erred in omitting discussion of Dr. Sacks's opinion.

### 3.    Examining Physician Psychologist John Adler, Ph.D.

Mr. Whittenberg cites the opinion of examining psychologist John Adler, Ph.D.  Pl.'s Opening Br. 12.  He points to Dr. Adler's opinion that he was irritable, agitated, tangential and depressed, and subsequent opinion that Mr. Whittenberg would have problems coping with stress and responding appropriately to authority figures.  *Id.*  Mr. Whittenberg does not identify specific error in the ALJ's decision pertaining to Dr. Adler.

Dr. Adler evaluated Mr. Whittenberg on two occasions, on June 1, 2007 (Tr. 371-74), and on April 24, 2008.  Tr. 651-54.  In June 2007, Dr. Adler assessed depression and a rule-out personality disorder diagnosis.  Tr. 373.  Here he concluded that "the objective evidence was consistent with depression and irritability, and this certainly could interfere with social interaction and coping with stress."  *Id.*  Dr. Adler stated that Mr. Whittenberg's concentration in conversation was effected by his mood, specifically frustration, "but this was less a problem when performing specific mental tasks."  *Id.*

In his second opinion, issued in April 2008, Dr. Adler changed his primary diagnosis to dysthymic disorder.  Tr. 654.  He assessed a personality disorder and a rule-out learning disorder

14 - FINDINGS AND RECOMMENDATION

diagnosis. Tr. 654. Here Dr. Adler concluded that Mr. Whittenberg's concentration difficulty might be due to "poor skills in general, and at other times, due to his dwelling on his unhappiness." Tr. 653.

The ALJ noted both of Dr. Adler's examination reports, and cited Dr. Adler's personality disorder diagnosis. Tr. 36. The ALJ gave his opinion "some weight because he personally met with the claimant on one or more occasion and performed his own independent tests of the claimant's abilities. In addition, his opinions are in accordance with the medical evidence as a whole." Tr. 36-37. This reasoning is consistent with the legal standards articulated above. *Lester*, 81 F.3d at 830; *Bayliss*, 427 F.3d at 1216.

Mr. Whittenberg now asserts that the ALJ failed to address Dr. Adler's observations regarding his "ability to cope with stress" and respond to authority figures, as well as Dr. Adler's impressions regarding his depression, agitation, and "inability to maintain attention, especially during conversation." Pl.'s Opening Br. 14.

Dr. Adler made no comment that Mr. Whittenberg cannot interact with authority figures. Instead, he noted Mr. Whittenberg's own report that he "had problems with bosses half his age," and quit a job because he thought he was being treated poorly. Tr. 371. This statement does not establish that Dr. Adler opined that Mr. Whittenberg would have trouble interacting with authority figures in a manner that constituted a work-related limitation.

Regarding Mr. Whittenberg's remaining assertions, the ALJ's RFC restricted Mr. Whittenberg to simple repetitive tasks without public contact or work in groups. Tr. 35. This assessment accommodates conversational difficulties. The ALJ also precluded Mr. Whittenberg

from working "with harsh or overly critical supervisors." Tr. 35. Mr. Whittenberg's counsel did not ask the vocational expert to consider the effects of his "stress" upon employment; therefore this court cannot now point to evidence establishing that this alleged symptom would impact Mr. Whittenberg's ability to perform work activity.

For these reasons, Mr. Whittenberg fails to establish that the ALJ erroneously omitted limitations assessed by Dr. Adler.

### 4.    Reviewing Physicians Peter LeBray, Ph.D., and Frank Lahman, Ph.D.

Mr. Whittenberg states that Disability Determination Services reviewing psychologists Peter Lebray, Ph.D., and Frank Lahman, Ph.D., opined that he has "moderate" limitations in unspecified mental functioning, and that the ALJ failed to consider these limitations in assessing his RFC. Pl.'s Opening Br. 14.

Dr. Lahman reviewed Mr. Whittenberg's medical record on June 5, 2007. Tr. 375-88. Dr. Lahman found "mild" restriction in Mr. Whittenberg's activities of daily living, and "moderate" restriction in his ability to maintain social functioning and concentration, persistence, and pace. Tr. 385. Dr. LeBray reviewed the same record on April 29, 2008. Tr. 671-73. He found "no significant limitation" in Mr. Whittenberg's ability to: (1) remember locations and work-like procedures; (2) understand, remember, and carry out very short, simple instructions; (3) perform activities within a schedule; (4) maintain regular attendance and be punctual; (5) sustain an ordinary routine without special supervision; (6) work in coordination or proximity to others without being distracted; (7) make simple work-related decisions; (8) complete a normal workweek without interruption from psychological symptoms; (9) ask simple questions; (10) accept instructions and respond to supervisor

criticism; (11) maintain socially appropriate behavior; (12) respond to changes in a work setting; (13) be aware of normal workplace hazards; and (14) travel in unfamiliar places.  Tr. 671-72.  Dr. LeBray found Mr. Whittenberg "moderately" limited in: (1) understanding, remembering, and carrying out detailed instructions; (2) maintaining concentration for extended periods; (3) interact with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) set realistic goals or make plans independently of others.  Tr. 672.

The ALJ's RFC limited Mr. Whittenberg to simple, repetitive work, with occasional public contact, and no group work.  Mr. Whittenberg does not presently establish the manner in which the opinions of Drs. LeBray and Lahman establish additional limitations.  Instead, Mr. Whittenberg asserts, without citation, that a "successful worker must be able to make judgments that are commensurate with the functions of unskilled work . . ." and respond to various work situations.  Pl.'s Opening Br., 18.  Such a blanket submission does not establish that the ALJ erroneously considered the opinions of Drs. Lahman and LeBray.  Further reasoning that "a moderate restriction is more than a mild restriction" (Pl.'s Opening Br. 20) also fails to establish that the ALJ omitted limitations cited by Drs. Lahman and LeBray.

Mr. Whittenberg further asserts that the Commissioner's internal instructions, "POMS," establishes error regarding the ALJ's assessment of Drs. Lahman and LeBray.  Pl.'s Opening Br., 18.  The Commissioner's internal manuals do not create legally enforceable duties.  *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2002).  This court may not rely upon such submissions.  *Id.* at 1023.  Mr. Whittenberg's argument pertaining to the POMS manual therefore fails.

In summary, the ALJ's findings regarding Drs. Lahman and LeBray should be affirmed.

17 - FINDINGS AND RECOMMENDATION

### 5.    Nurse Practitioner Isabel Toledo Silvestri

Finally, Mr. Whittenberg asserts that the ALJ erroneously evaluated the opinions of treating nurse practitioner Isabel Toledo Silvestri.  Pl.'s Opening Br. 12-13.

The Appeals Council accepted Ms. Silvestri's opinion into the record.  Tr. 4.  This court's review of the record relating to the ALJ's decision expressly includes review of evidence accepted by the Appeals Council.  *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); *Taylor v. Astrue*, 659 F.3d 1228, 1232 (9th Cir. 2011).

Ms. Silvestri treated Mr. Whittenberg between January and May 2010 at Multnomah County Health Services.  During this time she prescribed psychotropic medications and monitored Mr. Whittenberg's condition.  Tr. 738-39, 741, 745, 747, 753, 769, 777, 781.  Ms. Silvestri also completed an RFC questionnaire for Mr. Whittenberg's attorney on September 29, 2010.  Tr. 788-90. She indicated that Mr. Whittenberg was "moderately" limited in: (1) understanding, remembering, and carrying out very short, simple instructions; (2) making simple work-related decisions; (3) asking simple questions; (4) awareness of normal workplace hazards; and (5) his activities of daily living.  Tr. 788-90.  Ms. Silvestri indicated "marked" limitations in all other categories, including: (1) the ability remember locations and procedures; (2) understand and remember detailed instructions; (3) maintain concentration for extended periods; (4) perform activities within a schedule; (5) sustain an ordinary routine; (6) work in proximity to others; (7) complete a workweek without interruption from psychological symptoms; (8) interact appropriately with the general public; (9) accept instructions and workplace criticism; (10) get along with coworkers; (11) respond to workplace changes; (13) travel to unfamiliar places; (14) set realistic goals; (15) maintain social

functioning; and (16) maintain concentration, persistence, and pace. *Id.* Finally, Ms. Silvestri indicated that Mr. Whittenberg had experienced four or more episodes of decompensation. Tr. 790.

This evidence directly contradicts the ALJ's finding that Mr. Whittenberg could perform the work indicated in his RFC, and that Mr. Whittenberg could consequently perform work in the national economy. The effect of this evidence is discussed below.

## REMAND

Mr. Whittenberg fails to establish reversible error regarding his own testimony or that of the lay witness, or in the ALJ's assessment of the opinions of Drs. Sacks, Adler, LeBray, and Lahman. However, the Commissioner concedes that the ALJ improperly evaluated Dr. Dodson's opinion, and the evidence submitted to the Appeals Council directly contradicts the ALJ's conclusion that Mr. Whittenberg could perform work in the national economy. In such circumstances the Commissioner's decision may not be affirmed.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), *citing Bunnell v. Sullivan*, 947 F2d 871, 348 (9th Cir. 2003) (en banc). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The Commissioner concedes that the ALJ failed to provide legally sufficient reasons to reject Dr. Dodson's opinion, and the ALJ did not address Ms. Silvestri's opinion because it was not before him. Both parties agree the record is fully developed. The matter thus turns upon whether "outstanding issues" prevent a finding of disability. *Id.*

The omitted evidence, particularly the opinion of Ms. Silvestri, points to a finding of disability. Ms. Silvestri stated that Mr. Whittenberg had "marked" difficulty in remembering locations and work-like procedures, maintaining concentration, complete a workweek without interruption from psychological symptoms, and maintaining socially appropriate behavior in the workplace. Tr. 788-89. Mr. Whittenberg's counsel asked the vocational expert to consider an individual who missed three of more days per work due to depression, or "was easily subjected to fits of anger" at least once per month, or required periodic reminding of his duties due to memory

problems. Tr. 99-100. The vocational expert responded that, in each instance, an individual would be precluded from maintaining employment in the national economy. Tr. 100.

The Commissioner now asserts that "many aspects of the record" support a finding of non-disability, and cites treatment notes pertaining to Mr. Whittenberg's back impairment. Def.'s Br. 12. This submission fails to address Dr. Dodson's and Ms. Silvestri's opinions regarding Mr. Whittenberg's mental limitations, which is the matter presently before this court. Similarly, asserting that Drs. Adler, LeBray, and Lahman did not find Mr. Whittenberg precluded from work activity also does not address the effect of the opinions of Dr. Dodson and Ms. Silvestri. Def.'s Br. 13.

Recent caselaw redirects that the reviewing court considers evidence before the Appeals Council, and takes the entire record into account. *Brewes*, 682 F.3d at 1162. When the Vocational Expert testifies that additional limitations established in evidence before the Appeals Council leads to a finding of disability at step five, the court credits that evidence. *Id.*

However, the record suggests that Mr. Whittenberg's drug use has, at times, contributed to his limitations: Dr. Dodson and other medical providers clearly stated that Mr. Whittenberg's drug use was significant to his treatment. Tr. 686, 689, 690. The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935. Thus, outstanding issues must be resolved before a determination that award of benefits is inappropriate.

In such instances, the court declines to credit the improperly omitted testimony. *Luna*, 623 F.3d at 1035. The matter must be remanded for further proceedings to address the opinions of Dr. Dodson and Ms. Silvestri. If necessary, the ALJ must then revise her RFC determination. The ALJ

must subsequently make adequate step four and five findings incorporating any revised findings, and, if necessary, address any effect of Mr. Whittenberg's drug use under 20 C.F.R. §§ 404.935; 416.935.

## CONCLUSION

For the reasons above, the Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the further proceedings.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 4, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th of August, 2012.


　　　　　/s/ John V. Acosta　　　
John V. Acosta
United States Magistrate Judge